```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
```

CAMILO VELEZ
    Plaintiff,

    v.                                                  CIVIL ACTION NO.
                                                                   20-10957-MBB

THOMAS A. TURCO, III,
Former Commissioner of the Massachusetts
Department of Correction, STEVEN SILVA,
Former Superintendent of the Souza
Baranowski Correctional Center,
EFRAIN LOPEZ, Correction Officer, and
JOHN McLEAN, Correction Officer,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS**
**(DOCKET ENTRY # 18)**

**August 10, 2021**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by defendants Thomas A. Turco, III ("Turco"), Efrain Lopez ("Lopez"), and John McLean ("McLean") (collectively "defendants") under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). (Docket Entry # 18). Plaintiff Camilo Velez ("plaintiff") did not file an opposition.

<u>PROCEDURAL BACKGROUND</u>

Plaintiff, an inmate at the Souza Baranowski Correctional Center ("SBCC"), filed this action pro se, claiming that defendants failed to protect him from another inmate's attack in violation of the Eighth and Fourteenth Amendments and 42 U.S.C.

§ 1983 ("section 1983").[1]  (Docket Entry # 1).  The complaint alleges that defendants failed to protect plaintiff and that their policy of "'force moving'" prisoners into protective custody units violates plaintiff's Eighth and Fourteenth Amendment rights under section 1983.  (Docket Entry # 1).

In seeking dismissal, defendants argue that the allegations do not show they had actual knowledge of a substantial risk of serious bodily harm to plaintiff.  (Docket Entry ## 18, 19).  In the alternative, defendants submit this action should be stayed or dismissed under the Colorado River[2] doctrine because this case is duplicative of an earlier-filed action pending in Massachusetts Superior Court (Suffolk County) ("state court action").  (Docket Entry ## 18, 19).

## STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion is well established.  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief

---

[1] "'[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'" Bishay v. Cornetta, No. CV 17-11591-ADB, 2017 WL 5309683, at *3 n.4 (D. Mass. Nov. 13, 2017) (alterations in original).  Liberally construing the pro se complaint, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), it therefore raises a failure to protect claim in violation of the Eighth and Fourteenth Amendments under section 1983.

[2] Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).

that is plausible on its face," even if actual proof of the facts is improbable. Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007); Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016). The "standard is 'not akin to a "probability requirement," but it'" requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (citations omitted). "'[W]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"'" In re ARIAD Pharms. Sec. Litig., 842 F.3d 744, 756 (1st Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A]ll reasonable inferences" are drawn "in the pleader's favor." Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016). Legal conclusions are not considered. See Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 79 (1st Cir. 2008).

Defendants attached three documents to a supporting memorandum to the motion to dismiss. (Docket Entry ## 19-1, 19-2, 19-3). This court considers two of them, namely, the docket and the complaint in the state court action (Docket Entry ## 19-1, 19-2), because they fall within one or more exceptions which allow consideration of documents extraneous to a complaint without "turning the 12(b)(6) motion into a motion for summary judgment." Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19,

3

25 (1st Cir. 2018) (allowing court to "consider extrinsic documents, such as 'documents the authenticity of which are not disputed by the parties'" and "'official public records'") (citations omitted); Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008) (allowing consideration of documents susceptible to judicial notice).

FACTUAL BACKGROUND

Plaintiff was an inmate at SBCC throughout the relevant time period. (Docket Entry # 1). Turco was the Commissioner of Correction, defendant Steven Silva ("Silva") was the Superintendent of SBCC, and Lopez and McLean were correctional officers during the relevant time period. (Docket Entry # 1).

On or about March 12, 2018, another inmate, Fabian Warner ("Warner"), was moved into the same protective custody unit ("Unit G-1") that housed plaintiff. (Docket Entry # 1, pp. 3-4). Warner initially refused to move to Unit G-1 from his location in the restrictive housing unit ("RHU"). (Docket Entry # 1, p. 4). He was therefore "forcefully moved into the" G-1 Unit. (Docket Entry # 1, p. 4, ¶ 7). Once there, Warner proceeded to flood his cell with water and feces whereupon he was removed from Unit G-1 and returned to RHU. (Docket Entry # 1, p. 4).

On or about March 14, 2018, defendants "force[] moved" Warner in restraints from RHU back to Unit G-1.[3] (Docket Entry # 1, p. 4, ¶ 9). Upon entering the unit, Warner "yelled out in the unit for everyone to hear, that he was going to stab a prisoner on G-1." (Docket Entry # 1, p. 4, ¶ 10). Lopez and McLean were assigned to Unit G-1 at the time and heard Warner's announcement. (Docket Entry # 1, p. 5). They did not do anything in response. (Docket Entry # 1, p. 5).

On the same day, "plaintiff entered the shower and locked the door." (Docket Entry # 1, p. 5, ¶ 12). Warner asked Lopez and McLean to unlock the shower door, and they complied. (Docket Entry # 1, p. 5). "Warner then entered the shower and began stabbing and slashing plaintiff with an instrument" that had been fashioned into a knife. (Docket Entry # 1, p. 5, ¶ 13).

On March 30, 2019, plaintiff filed the state court action against defendants and two other individuals in Massachusetts Superior Court (Suffolk County).[4] (Docket Entry # 19-2, pp. 1-

---

[3]  The dates in the complaint are somewhat contradictory because the complaint states that the above move took place "[o]n or about March 14" but then states that "[o]n the same day of March 18, 2018," Lopez and McLean unlocked a shower door and allowed Warner to enter while plaintiff was taking a shower. (Docket Entry # 1, pp. 4-5, ¶¶ 9, 12). Construing the complaint in plaintiff's favor, the events took place on the same day.
[4]  The two other individuals are "Carol A. Mici[,] Acting Commissioner of Corrections" and "Steven Kenneway[,]

15).  The complaint revolves around Warner's March 2018 attack on plaintiff and alleges an Eighth Amendment section 1983 violation as well as other causes of action.  (Docket Entry # 19-2).  In the state court action, discovery is closed, and the court scheduled a final pretrial conference for late October 2020.[5]  (Docket Entry # 19-1).  The state court denied a motion to appoint counsel and a motion for leave to file an amended complaint filed by plaintiff on April 16 and 21, 2020, respectively.  (Docket Entry # 19-1, p. 9).  Plaintiff filed this action on May 18, 2020.  (Docket Entry # 1).  On September 11, 2020, the state court denied a motion plaintiff filed in July 2020 to voluntarily dismiss the action.  (Docket Entry # 19-1, p. 10).

## DISCUSSION

Defendants present two arguments in support of their motion.  First, they argue that the complaint is subject to dismissal because the allegations fail to plausibly suggest that defendants were deliberately indifferent to a substantial risk of serious bodily harm.  (Docket Entry # 19, pp. 4-7).  They

---

Superintendent."  (Docket Entry # 19-2, p. 1).

[5]  The Rule 12(b)(6) record does not include more recent information because defendants filed the motion to dismiss in October 2020.  This court takes judicial notice that the Massachusetts Supreme Judicial Court issued a number of Orders restricting in-person jury trials during the coronavirus pandemic.  See https://www.mass.gov./lists/repealed-supreme-judicial-court-orders-in-re-covid-19-cornoavirus-pandemic.

6

note that the complaint "does not allege that the prison staff knew that [plaintiff's] alleged assailant had a weapon, that the inmate had a known propensity of attacking inmates, or that [plaintiff] was in a unique situation that placed him in some particular risk of an attack." (Docket Entry # 18). They further point out that deliberate indifference "requires 'an actual, subjective appreciation of the risk to inmates that is analogous to the standard for determining criminal recklessness,'" which is absent from the complaint. (Docket Entry # 19, p. 5) (quoting Brown v. Corsini, 657 F. Supp. 2d 296, 306 (D. Mass. 2009)).

Second, in the event this court does not dismiss the complaint under Rule 12(b)(6), defendants argue this action should be dismissed or stayed under the "Colorado River abstention doctrine" because it is duplicative of the state court action. (Docket Entry # 19, pp. 7-11). Addressing eight factors often considered by courts in the First Circuit, defendants maintain that "wise judicial administration" strongly counsels against allowing this federal action to proceed. (Docket Entry # 19, pp. 6-11). This court considers the arguments in the order defendants present them.

A. Deliberate Indifference

"Under the Eighth Amendment, 'prison officials have a duty to protect prisoners from violence at the hands of other

7

prisoners.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  An Eighth Amendment failure to protect claim requires: (1) the inmate to "'show that he is incarcerated under conditions posing a substantial risk of serious harm'"; and that (2) "the prison official . . . acted, or failed to act, with 'deliberate indifference to inmate health or safety.'"[6] Id. (quoting Farmer, 511 U.S. at 834).  Under the first prong, "'the alleged deprivation of adequate conditions must be objectively serious, i.e., "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."'" Cordero v. Dickhaut, Civil Action No. 11-10098-FDS, 2014 WL 6750064, at *6 (D. Mass. Sept. 19, 2014) (quoting Giroux v. Somerset Cnty., 178 F.3d 28, 32 (1st Cir. 1999) (quoting Farmer, 511 U.S. at 834)).  Under the second prong, "a prison official . . . must 'possess[] a sufficiently culpable state of mind, namely one of "deliberate indifference" to an inmate's health or safety.'"  Norton v. Rodrigues, 955 F.3d 176, 185 (1st Cir. 2020) (citation omitted).

As noted, defendants submit the complaint fails to plausibly suggest they acted with deliberate indifference to a substantial risk of harm.  Demonstrating "deliberate

---

[6] Lakin addressed the first prong, see id. at 72 n.5, whereas here defendants seek dismissal based on the second prong.

8

indifference requires knowledge of a substantial risk of serious harm and an unreasonable response to the same" by the prison official.  Id.  The "'"deliberate" part of "deliberate indifference" requires that a prison official subjectively "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."'"  Id. (ellipses and brackets omitted).

"In response to a motion to dismiss," a court "must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009). As to Turco, the complaint is bereft of any facts that he was present during the altercation or had knowledge of any risk posed by Warner.  At most, the complaint refers to a "custom[,] practice[,] and policy of force moving Warner into a unit" in restraints against his will.  (Docket Entry # 1, p. 4, ¶ 9). The complaint, however, does not provide any facts regarding Turco beyond a conclusory allegation of knowledge, namely, that "[d]efendants are well aware that certain prisoners who do not want to be in [Unit G-1] will attack other prisoners within the unit" and the existence of "Silva's [known] policy and practice" of "mov[ing] the prisoner into the unit-by force, if necessary."[7]

---

[7]  Silva was "Superintendent of SBCC" during the relevant time. (Docket Entry # 1, p. 3, ¶ 3).  Subsequent to filing the motion

9

(Docket Entry # 1, pp. 5-6, ¶ 14).  Turco, who occupies a position well removed from SBCC and the institution of any policy of force at SBCC to move prisoners into objectionable housing, lacks the requisite knowledge, by virtue of this policy or otherwise, from the facts and reasonable inferences drawn from the complaint.  See Farmer, 511 U.S. at 844 ("[p]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment").  Turco is therefore dismissed as a defendant.

Turning to Lopez and McLean, they heard Warner's statement that "he [Warner] was going to stab a prisoner on" Unit G-1.  (Docket Entry # 1, p. 4, ¶ 10).  Although there is no indication they knew Warner had a weapon, they unlocked plaintiff's shower door and allowed Warner to enter at Warner's request on "the same day"[8] that he made this statement and a few days earlier had flooded his cell with feces in protest of the move to Unit G-1.  (Docket Entry # 1, pp. 4-5,  ¶¶ 8, 12).  Coupled with the "known" (Docket Entry # 1, pp. 5-6, ¶ 14) albeit somewhat amorphous policy (the complaint provides no examples of prior attacks based on the policy), the complaint plausibly sets out an Eighth Amendment failure to protect claim against Lopez and

---

to dismiss, defendants' counsel filed a notice of appearance on behalf of Silva.  (Docket Entry # 24).  Only Turco, Lopez, and McLean filed the motion to dismiss.  (Docket Entry # 18).
[8]  See footnote three.

10

McLean.  See generally Farmer, 511 U.S. at 842-43 (discussing knowledge of obvious risk).

B.  Colorado River Abstention

The presence of parallel litigation in state court does not in and of itself merit abstention in federal court.  Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 (1st Cir. 2010); see Sirva Relocation, LLC v. Richie, 794 F.3d 185, 191 (1st Cir. 2015). Indeed, "'[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'"  Barr v. Galvin, 626 F.3d 99, 107 (1st Cir. 2010) (quoting Colorado River, 424 U.S. at 813); see Conservation Law Found., Inc. v. Exxon Mobil Corp., 3 F.4th 61, 71 (1st Cir. 2021) (federal courts have "'virtually unflagging obligation . . . to exercise the jurisdiction given them'") (quoting Chico Serv. Station, Inc. v. Sol P.R., Ltd., 633 F.3d 20, 29 (1st Cir. 2011)).  There are circumstances, however, where the pendency of a similar action in state court may warrant federal abstention based on "'considerations of wise judicial administration' that counsel against duplicative lawsuits."  Jiménez, 597 F.3d at 27 (quoting Colorado River, 424 U.S. at 817).  These circumstances were first expounded upon in Colorado River, 424 U.S. at 817-20, the landmark Supreme Court case allowing federal courts, in limited instances, to stay or dismiss proceedings that overlap with concurrent litigation in state court.  Jiménez, 597 F.3d at 21.

"The crux of the Colorado River doctrine is the presence of 'exceptional' circumstances displaying 'the clearest of justifications' for federal deference to the [state] forum in the interest of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 115 (1st Cir. 2012) (quoting Colorado River, 424 U.S. at 813, 817, 819); see Leiva v. DeMoura, Civil Action No. 20-11367-PBS, 2021 WL 1858366, at *2 (D. Mass. May 10, 2021). Eight non-exhaustive factors are considered under the doctrine:

> (1) whether any court has jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 14 n.17 (1st Cir. 2013); see Nazario-Lugo, 670 F.3d at 115; Jiménez, 597 F.3d at 27-28; see e.g., Covidien LP v. Esch, 280 F. Supp. 3d 284, 285 (D. Mass. 2017) (applying factors). Ultimately, these factors are a "'discretionary tool'" to utilize in determining whether to defer to the state court. Nazario-Lugo, 670 F.3d at 115 (quoting Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002)). "'[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest

on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" Jiménez, 597 F.3d at 28 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). This court proceeds to analyze each factor in turn.

1. Jurisdiction Over a Res

Whether any court has jurisdiction over a res is neutral. There is no res involved in this suit.

2. Geographical Inconvenience

Both the state and federal cases are being litigated in Boston, Massachusetts. The complaint provides no indication that the federal forum is any more convenient to plaintiff than the state forum. The second factor is therefore neutral.

3. Piecemeal Litigation

The piecemeal litigation to be avoided under Colorado River is more than the "repetitive adjudication" that occurs in any state-federal parallel proceedings. Jiménez, 597 F.3d at 29. Rather, "'concerns about piecemeal litigation . . . focus on the implications and practical effects of litigating suits deriv[ed] from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.'" Jiménez, 597 F.3d at 29 (citation omitted); see Covidien, 280 F. Supp. 3d at

13

286 (citing KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 11 (1st Cir. 2003)).

Here, both actions are based on nearly identical facts and overlapping legal issues. Defendants are correct that proceeding with both suits would lead to "redundant efforts" and potentially "inconsistent decisions." (Docket Entry # 19, p. 9). The advanced state of litigation approaching trial in the state court action (Docket Entry # 19-1) relative to the nascent proceedings in this court lends further support to abstention. See Leiva, 2021 WL 1858366, at *3 (finding claims arising out of "same factual nucleus" and involving "same legal issues" present risk of inconsistent rulings). Indeed, there is a viable risk that this federal litigation could become "advisory or moot" as a result of the state court proceeding. See Barnstable Cty. v. 3M Co., Civil Action No. 17-40002-DJC, 2017 WL 6452245, at *15 (D. Mass. Dec. 18, 2017) (citing Currie, 290 F.3d at 10-11). The desirability of avoiding piecemeal litigation therefore weighs in favor of abstention.

4. Order in Which Forums Obtained Jurisdiction

Plaintiff filed the state court action on April 3, 2019, over a year before he filed this action. (Docket Entry # 19-1). Discovery is closed and the state court likely conducted the final pretrial conference in late October 2020. (Docket Entry # 19-1). In contrast, the instant suit has yet to progress beyond

14

a motion to dismiss.  See Jiménez, 597 F.3d at 31 (noting "absence of any federal proceedings beyond a motion to dismiss favors the surrender of jurisdiction"); see also Bradeen v. Bank of N.Y. Mellon Trust Co., Civil Action No. 18-cv-11753-FDS, 2018 WL 5792319, at *5 (D. Mass. Nov. 2, 2018) ("relative advancement of the cases matters" when deciding order in which forums obtained jurisdiction).  The order in which the forums obtained jurisdiction weighs in favor of abstention.

5.  Federal or State Law Controlling

"'The presence of federal-law issues must always be a major consideration weighing against [abstention].'"  Leiva, 2021 WL 1858366, at *3 (quoting Moses, 460 U.S. at 26).  Under the fifth factor, however, "abstention may be preferable when the 'parties' claims present particularly novel, unusual or difficult questions of legal interpretation.'"  Jiménez, 597 F.3d at 30 (citation omitted).  Indeed, the presence of state law issues "weighs in favor of surrender only in 'rare circumstances' . . . when a case presents complex questions of state law that would best be resolved by a state court."  Quality One Wireless, LLC v. Goldie Group, LLC, 37 F. Supp. 3d 536, 544 (D. Mass. 2014) (quoting Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990)).

While the state court action raises both federal and state claims, the instant action raises the singular federal section

1983 Eighth Amendment claim (Docket Entry # 1, pp. 6-8) and does not raise any novel, unusual, difficult, or complex question of state law.  There are no rare circumstances warranting deference to the state court.  This factor weighs against abstention.

6.  Adequacy of State Forum

The circumstances provide no explicit reason to question the adequacy of the state forum.  This factor is therefore neutral.

7.  Vexatious Nature of Federal Claim

The seventh factor entails considering "'the vexatious or reactive nature of either the federal or the state litigation.'" Ezike v. Bliss, Civil Action No. 16-11832-DJC, 2017 WL 1826495, at *5 (D. Mass. May 5, 2017) (quoting Villa Marina, 915 F.2d at 15)).  In evaluating this factor, district courts "look beyond the federal action and consider the circumstances giving rise to the filing of the state suit."  Mass. Biologic Labs v. Medimmune, LLC, 871 F. Supp. 2d 29, 38 (D. Mass. 2012) (quoting Moses, 460 U.S. at 17 n.20)).  "Reactiveness is 'where one party files a federal action in reaction to an adverse ruling in state court'" whereas "vexatiousness 'ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts.'"  Ezike, 2017 WL 1826495, at *5 (citations omitted).

16

Here, plaintiff filed this action shortly after the state court denied two motions filed by plaintiff. Such timing raises the reasonable inference that plaintiff filed this action to obtain a more favorable forum with more favorable rulings. While there is no indication of a vexatious motive, the circumstances indicate the reactive nature of the filing of this action. After filing this action, plaintiff filed the motion to voluntarily dismiss the state court action. The seventh factor favors abstention.

8. Respect for Removal Jurisdiction Principles

Plaintiff did not remove the state court action to federal court. As such, there is no need to consider the principles underlying removal jurisdiction. This final factor is neutral. See JLI Invest S.A. v. Computershare Trust Co., N.A., No. 15-cv-11474-ADB, 2016 WL 4775450, *8 (D. Mass. Sept. 13, 2016) (reasoning that where an action is not removed to federal court, there is no need to consider principles underlying removal jurisdiction).

In sum, the balance of factors favors abstention particularly given the advanced nature of the state court proceeding, the nearly identical facts and overlapping legal issues, and the reactive nature of this action. This remains the case even with the balance heavily weighted in favor of exercising jurisdiction. See Jiménez, 597 F.3d at 28.

Regarding a dismissal or a stay, "Colorado River abstention has historically resulted in a stay . . . [as there is] no harm to judicial economy in going the more cautious route." Jiménez, 597 F.3d at 32; see Bacardí, 719 F.3d at 14; see also Faith v. Truman Capital Advisors, LP, Civil Action No. 19-11301-DJC, 2020 WL 263534, at *5 (D. Mass. Jan. 16, 2020) (concluding that where state court proceedings are still pending, stay is more appropriate).  Adhering to this precedent, a stay is more appropriate along with the filing of periodic status reports, which this court will review to determine if a stay remains appropriate.

## CONCLUSION

In accordance with the foregoing discussion, the motion to dismiss (Docket Entry # 18) is **ALLOWED** as to Turco and **DENIED** as to Lopez and McLean.  The proceedings are **STAYED**, and the remaining defendants are directed to file a status report on the progress of the state court action on September 9, 2021, and every 30 days thereafter until the stay is lifted.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge